﻿Citation Nr: AXXXXXXXX
Decision Date: 06/16/20 Archive Date: 06/16/20

DOCKET NO. 190814-20102
DATE: June 16, 2020

ORDER

1. Service connection for Parkinson’s disease is granted. 

2. Service connection for diabetes mellitus, type II (diabetes) is denied.

FINDINGS OF FACT

1. The preponderance of the evidence is in equipoise as to whether Parkinson’s disease is caused by or otherwise attributable to service.

2. The preponderance of the evidence establishes that diabetes is not caused by or otherwise attributable to service. 

CONCLUSIONS OF LAW

1. The criteria for service connection for Parkinson’s disease have been met. 38 U.S.C. §§ 1110, 1131, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304. 

2. The criteria for service connection for diabetes have not been met. 38 U.S.C. §§ 1110, 1131, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55, 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). AMA has created a new framework for veterans dissatisfied with the Department of Veterans Affairs’ decisions on their claims to seek review. An AMA review can be triggered in three ways. First, AMA automatically applies to all claims as to which an Agency of Original Jurisdiction (AOJ) issued an initial decision on or after the effective date of AMA, i.e., February 19, 2019. 38 C.F.R. §§ 3.2400, 19.2. Second, an AMA review can be triggered if a claimant elects to pursue an AMA review of his/her legacy claim after (s)he was furnished with a Statement of the Case (SOC) or a Supplemental SOC addressing the claim. See 38 C.F.R. § 3.2400(c)(1). Third, an AMA review can be triggered if a claimant has elected an AMA review of his/her legacy claim by opting in under the Rapid Appeals Modernization Program (RAMP). See 38 C.F.R. § 3.2400(c). The third scenario is present in this case, where the Veteran, who had active service from October 1974 to September 1984 while duty-stationed at, inter alia, Robins Air Force Base, Georgia (Robins AFB), is seeking service connection for his diabetes and Parkinson’s disease. 

Because the procedural history of this case is best understood through the prism of legal provisions raised during different stages of this litigation, the Board begins by summarizing the relevant legal authority. 

Service connection may be granted on a primary basis for a disability resulting from a disease or injury incurred in service during a period of war or a period other than war. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection can be established directly or presumptively. See 38 C.F.R. §§ 3.303, 3.304; Stefl v. Nicholson, 21 Vet. App. 120, 124-25 (2007). For instance, service connection established on a direct basis requires competent evidence of a current disability, a precipitating in-service event, and a nexus between such an event and the current disability. See Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009). 

In addition, there are numerous ways to establish a presumptive service connection. To illustrate, “[i]n 1991, Congress passed the Agent Orange Act [(Act)], codified at 38 U.S.C. § 1116, granting a presumption of service connection for certain diseases to veterans who served in [the Republic of Vietnam (Vietnam)]” during the Vietnam era. Procopio v. Wilkie, 913 F.3d 1371, 1373 (Fed. Cir. 2019). Therefore, VA regulations implementing this statutory presumption allow service connection for certain diseases suffered by the veterans who served on the landmass, inland waterways, and territorial sea of Vietnam during the Vietnam era when the evidence might otherwise not indicate that service connection is warranted. 38 C.F.R. § 3.303(d). Specifically, § 3.307 provides that such a veteran is presumed to have been exposed to herbicide agents unless there is affirmative evidence that (s)he was not exposed to any such agent, see 38 C.F.R. § 3.307(a)(6)(iii), while 38 C.F.R. § 3.309(e) provides that certain diseases, e.g., diabetes and Parkinson’s disease, are deemed service connected if it is presumptively established under § 3.307(a)(6)(iii) that the veteran was exposed to an herbicide agent. 

To give another example, under 38 C.F.R. § 3.309(f) presumptive service connection applies to “a veteran [who] was exposed to contaminants in the water supply at Camp Lejeune” during the period from August 1, 1953, to December 31, 1987, if the veteran seeks service connection for certain diseases, e.g., Parkinson’s disease. However, the diseases amenable to a presumptive service connection under each particular regulation are not necessarily the same. For instance, while Parkinson’s disease is amenable to a presumptive service connection if suffered by veterans who were exposed to contaminants in the water supply at Camp Lejeune, as well as those veterans who suffered exposure to tactical herbicides in Vietnam during the Vietnam era, diabetes is amenable to a presumptive service connection only if it is suffered by a veteran who served in Vietnam. 

A fortiori, a veteran who served at any other location that was polluted by dangerous chemicals at the time of his/her service cannot obtain a presumptive service connection for a disability listed either in § 3.309(e) or § 3.309(f) by asserting that the veteran experienced exposure “analogous” to that suffered by the veterans who served at Camp Lejeune or in Vietnam. Simply put, regulations governing presumptive service connection cannot support any “mix and-match” pleadings or pleadings “by analogy.” That said, a claimant unable to establish his/her claim for service connection on a presumptive basis is entitled to – and may nonetheless succeed at – establishing that very same claim on a direct basis. Moreover, even those disabilities that are diagnosed long after discharge may still be service connected on a direct basis if competent, credible, and probative evidence establishes that the disability is attributable to service. 38 C.F.R. § 3.303(d); Combee v. Brown, 34 F.3d 1039, 1043 (Fed. Cir. 1994). With these principles in mind, the Board now turns to the procedural history and substantive analysis of the Veteran’s claims.

In November 2014, the Veteran filed a notice of intent to apply for service connection for Parkinson’s disease and diabetes. In April 2015, the Veteran submitted his medical records generated by Dr. D.J.F., the Veteran’s private treating medical practitioner. Dr. D.J.F.’s entries demonstrate that the Veteran’s was diagnosed with and began being treated for Parkinson’s disease by Dr. R.D. in late 2012 or early 2013. In addition, Dr. D.J.F. indicated that, prior to being diagnosed with Parkinson’s disease, the Veteran had been diagnosed with and began being treated for numerous other disabilities, to include diabetes. 

In May 2015, the Veteran formally applied for service connection for Parkinson’s disease, omitting to make any reference to his diabetes. In conjunction with filing said application, the Veteran submitted his affidavit averring that, while in service, he was duty-stationed at Robins AFB, where he regularly consumed tap water dispensed from faucets/drinking fountains, used water to prepare food, as well as to wash/bathe/shower, and do laundry. The Veteran further averred that his military duties required him to walk through the Robins AFB grounds, to include during inclement weather, causing the Veteran’s exposure to the groundwater mixed with soil, a mixture of which soaked his footwear and clothes. The Veteran accompanied his affidavit by information as to the chemical contaminants present in the water supply and grounds of Robins AFB at the time of his service. 

In addition, the Veteran submitted a detailed opinion by Dr. C.M., a private medical practitioner who observed that exposure to certain chemical compounds was noted in medical literature as related to Parkinson’s disease. Upon reviewing the Veteran’s medical records, Dr. C.M. found that the Veteran’s symptoms and chronology of his Parkinson’s disease demonstrated that his disability was at least as likely as not related to his exposure to chemical compounds present in the water supply, groundwater, and soil of Robins AFB at the time of the Veteran’s service. 

In conjunction with making said filing, the Veteran also submitted a Disability Benefits Questionnaire executed by Dr. D.J.F., who arrived at the same conclusion as Dr. C.M.

In June 2015, the Veteran’s then-acting representative filed a memorandum of law addressing the Veteran’s Parkinson’s disease and relying on the statutory provisions underlying §§ 3.309(f) and (e). Essentially, her memorandum of law suggested that the Veteran’s Parkinson disease should qualify for a presumptive service connection “by analogy” to §§ 3.309(f) and (e), due to the similarities in the chemical compounds present in the water supply of Robins AFB at the time of the Veteran’s service and the chemicals used to produce tactical herbicides that were utilized in Vietnam during the Vietnam era or the chemical compounds present in the water supply at Camp Lejeune from August 1, 1953, to December 31, 1987. The June 2015 memorandum of law was silent as to the Veteran’s diabetes. 

In November 2015, the Veteran was afforded a VA examination with regard to his Parkinson’s disease. The VA examiner noted that the Veteran’s symptoms were severe but concluded that his Parkinson’s disease was not attributable to service. In support of her conclusion, the November 2015 VA examiner pointed out that the regulations governing presumptive service connection did not “recognize exposure to chemicals at Robins [AFB]” as a basis to award service connection, and “[i]t would be speculative” to find that the Veteran’s Parkinson’s disease was related to his service. 

Factors for assessing the probative value of medical evidence includes the thoroughness and detail of the medical opinion. Prejean v. West, 13 Vet. App. 444, 448-49 (2000). Here, the November 2015 VA examiner erroneously factored into her opinion the regulations governing presumptive service connection because that issue was neither before her, nor was she shown to possess the legal expertise needed to address that issue. Moreover, the legal standard that the VA examiner was required to employ was equipoise, and it did not require “certainty” because the Board gives the veteran the benefit of the doubt on any issue material to his/her claim when evidence is in equipoise. 38 U.S.C. § 5107; 38 C.F.R. § 3.102. Correspondingly, the November 2015 VA examiner’s observation that “it would be speculative” to causally relate the Veteran’s Parkinson’s disease to his service is of no assistance to the Board because the word “speculative” could equally be construed as suggesting that the equipoise standard was met or that the evidence was against finding a causal relation. Therefore, the Board allocates no probative value to the November 2015 VA examiner’s opinion.

In November 2015, the AOJ denied the Veteran’s claims for service connection for diabetes and Parkinson’s disease. In December 2015, he filed a Notice of Disagreement (NOD). In September 2016, he filed an opinion of Dr. M.S., who pointed out that the Veteran’s family history and medical treatment records demonstrated that his Parkinson’s disease was inconsistent with a natural development of the disease but was consistent with exposure to chemical compounds of the type present at Robins AFB at the time of the Veteran’s service. Therefore, Dr. M.S. found that it was at least as likely as not that the Veteran’s Parkinson’s disease was attributable to service. 

In March 2018, the Veteran filed his RAMP opt-in election. In April 2019, the AOJ issued a rating decision continuing denial of service connection for his diabetes and Parkinson’s disease. For reasons not immediately apparent to the Board, the AOJ stated that the positive nexus opinions rendered by Drs. M.S., D.J.F., and C.M. addressed both the Veteran’s Parkinson’s disease and his diabetes, even though these opinions were rendered solely with regard to his Parkinson’s disease. The Board, therefore takes this opportunity to point out that, while – under AMA – favorable findings rendered by an AOJ or the Board are binding for the purposes of later proceedings and appeals – the factual error committed by the AOJ as to the contents of Drs. M.S., D.J.F., and C.M.’s opinions did not qualify as a favorable factual finding, given that the AOJ found that the Veteran’s diabetes was not as likely as not attributable to service.

In August 2019, the Veteran filed a VA Form 10182 NOD and accompanied it by his Appellant’s Brief drafted by the Veteran’s current representative. The Veteran’s VA Form 10182 indicated that he selected the evidence AMA docket. Accordingly, the Board’s analysis is based on the evidence associated with the claims file as of the date of the April 2019 rating decision and the evidence submitted by the Veteran within 90 days from the date of his filing of the VA Form 10182. 

The Appellant’s Brief accompanying the Veteran’s VA Form 10182 has set forth his claim based on Parkinson’s disease. However, no argument has been made in support of the Veteran’s claim for service connection for diabetes, even though the Veteran’s current representative acknowledged that this claim has not been withdrawn.

The Board acknowledges that a substantial portion of this litigation has been dedicated to the issue of whether a clean-up of Robins AFB had taken place before, during, or after the Veteran’s service. However, as of now, the AOJ has conceded, and the record has unambiguously established, that the Veteran had served at Robins AFB before the clean-up took place. Thus, this determination is binding for the purposes of this appeal, and the Board finds that – in light of the Veteran’s lay statements, which the Board finds competent, credible, and probative – the Veteran was exposed to harmful chemical compounds through consumption/use of the water supply or by having a mix of soil and groundwater on his skin and clothes.

Accordingly, the Board finds that the Veteran has established an in-service event for the purposes of a direct service connection analysis. Moreover, the Board acknowledges that the Veteran’s current disabilities in the form of Parkinson’s disease and diabetes are not in dispute. Therefore, the only element in dispute is that of a nexus between the Veteran’s in-service exposure to harmful chemical compounds and his current disabilities.

It appears that the Veteran seeks to establish the nexus element both directly and presumptively. He, however, cannot establish the nexus element presumptively “by analogy” to the regulations applicable to the claims raised by the veterans who were exposed to contaminants in the water supply at Camp Lejeune, or to tactical herbicides used in Vietnam during the Vietnam era. This is so because neither § 3.309(e) nor § 3.309(f) support a claim pled “by analogy.” Correspondingly, to the extent the Veteran sought to establish his claims on a presumptive basis, his claims are denied.

However, the foregoing does not preclude the Veteran from establishing his claims on a direct basis by competent, credible, and probative nexus evidence. Here, the Board finds that the positive nexus opinions rendered by Drs. M.S., D.J.F., and C.M. are competent, credible, and highly probative. Moreover, and contrary to the November 2015 VA examiner’s impression, Drs. M.S., D.J.F., and C.M. did not render their opinions that the Veteran’s Parkinson’s disease was attributable to service on a presumptive basis. Rather, they examined the Veteran’s medical history, family history, the lack of a natural basis for the development of Parkinson’s disease, his exposure to harmful chemicals at Robins AFB, the medical literature drawing a connection between one’s exposure to harmful chemicals and the development of Parkinson’s disease, and found that a causal relationship was as likely as not present in the Veteran’s case. Correspondingly, the Board finds that the Veteran has established a nexus between his Parkinson disease and his service to at least the equipoise standard. Accordingly, under the doctrine of the benefit of the doubt, his claim for service connection for Parkinson’s disease is granted. 

Conversely, the Board is without a basis to conclude that the Veteran has established a causal connection between his diabetes and his active duty. Indeed, the Veteran’s service treatment records contain no entry that could reasonably be construed as suggesting that he suffered from diabetes in service, and the Veteran does not maintain otherwise. Further, his post-service treatment records do not contain any entry that could reasonably be construed as a competent medical opinion causally relating the Veteran’s diabetes to his service, and the Veteran did not suggest otherwise. In fact, the memorandum of law filed by the Veteran’s initial representative, as well as the Veteran’s Appellant’s Brief filed by his current representative, contain no argument in support of his claim based on diabetes. 

Moreover, the September 2016 lay statement executed by the Veteran’s wife shows that the Veteran had developed diabetes in around 2003, i.e.¸ more than 19 years after his separation from service and at least a decade prior to his Parkinson’s disease. The Veteran’s wife further stated that the Veteran reported to her that his diabetes was a congenital condition. Therefore, while the Board acknowledges that the Veteran’s application for service connection for diabetes implies his opinion that his diabetes was attributable to service, such an implied opinion is inconsistent with the Veteran’s report made to his wife in 2003. Further, the Veteran has not been shown to possess the expertise needed to opine about the etiology of his diabetes, since it is not a condition amenable to a layperson’s observation. See Layno v. Brown, 6 Vet. App. 465, 469 (1994). Correspondingly, the Board finds that the Veteran has failed to establish the nexus element of his claim for a direct service connection for his diabetes. Moreover, a presumptive service connection, while applicable to diabetes for the purposes of claims raised by the veterans who served on the landmass, internal waterways, and territorial sea of Vietnam during the Vietnam era, is inapplicable to a claim raised by a veteran who served at Robins AFB. Accordingly, the Veteran’s claim for a presumptive service connection for diabetes is also denied. Finally, the record is silent as to any causal relation between the Veteran’s service-connected Parkinson’s disease and his diabetes. Moreover, the record generated by Dr. D.J.F. and the Veteran’s wife’s lay statement show that the Veteran’s developed diabetes long before his Parkinson’s disease. Therefore, the Board is without a basis to find that the Veteran is entitled to service connection for diabetes on a secondary basis. Accordingly, the Veteran’s claim for service connection for diabetes is denied.

 

 

Cynthia M. Bruce

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Anna Kapellan, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.